IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| TUTTLE DOZER WORKS, INC., | ) | Civil Action No.: 2:06-cv-2182-DCN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OF LAW IN** |
| GYRO TRAC (USA), INC.; | ) | **OPPOSITION TO DEFENDANTS'** |
| GYRO-TRAC, INC.; GYRO-TRAC | ) | **MOTION TO DISMISS** |
| WEST COAST, INC.; USITECH NOV, | ) | |
| INC.; WOODPECKER INDUSTRIES; | ) | |
| QUEBEC, INC.; USITECH NOV (2004) | ) | |
| S.E.N.C.; DANIEL GAUDREAULT; and | ) | |
| WALTER OLIVER, JR., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Tuttle Dozer Works, Inc., ("Tuttle"), by counsel, states as follows for its Memorandum in Opposition to the Defendants'[1] Fed. R. Civ. P. 12(b)(2) Motion to Dismiss.

## I. Introductory Statement

Tuttle has sufficiently alleged the minimum contacts necessary to confer this Court's jurisdiction upon the Defendants. Included in the complaint are allegations that the Defendants acted as a single enterprise and have sold the GT-25 line of machines including the incident GT-25 in South Carolina. Complaint at 24, 25, 32, 34, 35, 37.[2] Appended to this memorandum are two affidavits with photographs which, when supplemented with non-conflicting facts from Defendant Daniel Gaudreault's ("Gaudreault") Affidavit,[3] also support Tuttle's complaint. The complicity of Defendant Gaudreault in his individual capacity and those of president of three of

---

[1] For the purpose of this memorandum, "Defendants" are meant to jointly signal movants: Gyro-Trac, Inc., Gyro-Trac West Coast, Inc.; Usitech Nov, Inc,; Quebec, Inc.,; and Woodpecker Industries.
[2] Paragraphs in Tuttle's complaint are referenced herein as: "Complaint at [ ]."
[3] Gaudreault's Affidavit is Exhibit 1 to the Defendants' Memorandum in Support of Defendants' Motion to Dismiss. Paragraphs in Gaudreault's Affidavit are referenced herein as: "Gaudreault Affidavit at [ ]."

the movants and vice president of a fourth movant has been alleged in complaint and as outlined herein.  Complaint at 20-25; 37.  Defendants have failed to present compelling evidence that this Court should not exercise jurisdiction over them.

## II.  Nature of the Case; Short Statement of Relevant Facts

Tuttle's lawsuit arises out of its March 2005 purchase of a GT-25 brush cutter machine for approximately $300,000.00 from South-Carolina based Defendant (and non-movant) Gyro-Trac (USA), Inc.  Complaint at 41.   The GT-25 brush cutter machine is advertised as a "heavy duty mulcher" capable of cutting down hardwood and softwood (trees) of almost any size and rendering them into mulch.  Complaint, Exhibit A at 4.  The GT-25 frame is installed on six (6) nylon and polyester reinforced rubber tracks, assembled with heat treated steel cross links.  Id.

Prior to accepting delivery of the incident GT-25 on or about April 4, 2005, Tuttle observed track slippage on the incident GT-25.  Complaint at 48.  Only after Gyro-Trac (USA), Inc. made misrepresentations that the undercarriage slippage and related problems were normal, and would cease after the GT-25 was "broken in", did Tuttle agree to accept delivery of the GT-25.  Complaint at 46, 48.   Since that time, the GT-25 has demonstrated significant and costly failures associated with all of its major systems including the undercarriage components that were ill-performing at the time the GT-25 was delivered. Complaint at 43, 49.   Tuttle provided Gyro-Trac (USA), Inc. with timely notice of each of the malfunctions. Complaint at 79.   In response, Gyro-Trac (USA), Inc. fraudulently misrepresented that Tuttle's purchase of replacement parts and/or the performance of additional service by the Defendants would adequately repair the GT-25.  Complaint at 86.   The Canadian-based Defendants make all, or nearly all warranty issues, decisions and approvals relating to the GT-25 machines, including the

incident GT-25.  Complaint at 34.  Notably, none of the Defendants have provided parts or service necessary to effectively repair the GT-25.  Complaint at 77.

Tuttle alleges that Gyro-Trac (USA), Inc. and the Defendants' inability to provide parts or service necessary to repair the GT-25 is the result of a design defect that plagues the GT-25. Complaint at 98.  Tuttle further alleges that the Defendants are interrelated business conduits of one another, that the Defendants effectively act as a single enterprise to manufacture, sell and service commercial land clearing machines, equipment and parts, including the incident GT-25. Complaint at 25.  Tuttle has alleged that the Defendants have marketed, demonstrated, sold and/or serviced the GT-25 machines in South Carolina.  Complaint at 37.  Finally, Tuttle alleges that the Defendants are merely a façade for the operations of non-movant Defendant Gaudreault. Complaint at 25.

Because of the actions of all the named defendants, Tuttle has incurred out-of-pocket expenses, business losses and anticipated lost profits due to the failure of the GT-25 to conform to the promises and affirmations made in the technical literature, printed advertisements, in-person demonstrations and representations.

### III.  Argument

For a court to exercise jurisdiction over the non-resident Defendants, a two-step analysis must be undertaken.  First, the court must determine if the non-resident defendant(s)' conduct meet(s) the requirements of South Carolina's long-arm statute, S.C. Code Ann. § 36.2-803. Second, the court must determine if the non-resident defendant(s) had sufficient contacts with the forum state to meet the constitutional standards of due process.  Moosally v. W.W. Norton & Company, 358 S.C. 320, 594 S.E.2d 878 (2004).

South Carolina's long arm statute extends to the constitutional limits imposed by the due process clause. See e.g., Hardy v. Pioneer Parachute Co., 531 F.2d 193, 195 (4th Cir. 1976); Southern Plastics Co. v. Southern Commerce Bank, 310 S.C. 256, 260, 423 S.E.2d 128, 130 (1992); Atlantic Soft Drink Co. v. South Carolina Nat'l Bank, 287 S.C. 228, 231, 336 S.E. 2d 876, 878 (1985). Accordingly, the state law analysis collapses into the constitutional analysis. Simply put, the Court must determine which of the Defendants, if any, had sufficient minimum contacts with South Carolina such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559 (1980); Burger King Corp. v. Rudzewics, 471 U.S. 462, 105 S.Ct. 2174 (1985).

At this stage of the litigation, Tuttle need only make a prima facie showing of a sufficient jurisdictional basis to defeat the Defendants' personal jurisdiction challenge. In that context, the Court need only decide Defendants' motion by review of the written materials submitted by the parties. Allen v. Columbia Fin. Management, Ltd., 297 S.C. 481, 484, 377 S.E.2d 352, 354 (S.C. Ct. App. 1988); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); UMBRO U.S.A. v. Goner, 825 F. Supp. 738, 739-740 (D.S.C. 1993); Mylan Laboratories, Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir.1993); Mid-State Distribs., Inc. v. Century Importers, Inc., 310 S.C. 330, 335, 426 S.E. 2d 777, ___ (1993).

In considering a Fed. R. Civ. P. 12(b)(2) jurisdictional challenge, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction. Combs, 886 F.2d at 676. The court will take as true the allegations of the plaintiff and resolve all factual disputes in

4

its favor. This includes any factual disputes brought up by submitted affidavits. Brown v. Investment Management and Research, Inc., 323 S.C. 395, 399, 475 S.E. 2d 754, ___ (1996).

The primary nexus between Tuttle, its purchase of the incident GT-25 from non-movant Gyro-Trac (USA), Inc., and the remaining defendants including the movants, is their unity of action in the marketing, manufacture, sale and service of commercial land clearing machines, equipment and parts for the GT-25 line of machines, including the incident machine in South Carolina. Complaint at 24, 25, 37. Tuttle also alleges that the Defendants operate as a façade for the operations of Gaudreault. Complaint at 25. It is the allegations of itemized and significant contacts of all the defendants that permit this Court to exercise jurisdiction over the Defendants. Complaint at 24, 25. These allegations include the sale of Gyro Track brush cutter line of machines, including the incident GT-25 in numerous states, including South Carolina. Complaint at 37.[4]

Notwithstanding the sufficiency of the allegations outlined above in Tuttle's complaint, additional evidentiary links are established by photographic evidence attached to two (2) affidavits submitted by Tuttle, and the non-conflicting evidence in the Gaudreault Affidavit that was appended to the Defendants' Memorandum of Law. Moreover, as outlined herein, Gaudreault is president or vice president of four of the five movants. Under the circumstances as alleged in the complaint, and because a corporation has no belief independent of its officers and agents and acts only through them, Gaudreault's knowledge and his actions are imputed to the applicable Defendants. See e.g., South Carolina Law Enforcement Division v. The "Michael and Lance", 284 S.C. 368, 370, 327 S.E. 2d 327 ___ (1985).

---

[4] Non-movant Gyro-Trac, (USA), Inc. has admitted these allegations as to it, only. Gyro-Trac (USA), Inc. Answer at 6.

5

A. Gyro-Trac, Inc.

In support of its motion to dismiss, Gyro-Trac, Inc. has submitted the affidavit of defendant Daniel Gaudreault, its president. Inter alia, Gaudreault asserts that movant Gyro-Trac, Inc. is merely a holding company. Gaudreault Affidavit at 4. Moreover, Gaudreault denies that Gyro-Trac, Inc. has any relationship with Tuttle. Gaudreault Affidavit at 16.

South Carolina's long arm statute permits jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed. S.C. Code Ann. § 36-3-803 (1)(g) (2003).

In addition to the allegations in its complaint described above, Tuttle has submitted the affidavit of its president Jack Tuttle attached hereto as Exhibit 1.[5] In his affidavit, Mr. Tuttle has verified the authenticity of a photograph attached as Exhibit C to his affidavit that was taken of the cab of the incident GT-25. Tuttle Affidavit at 3. The photograph identified as Exhibit C to Mr. Tuttle's Affidavit depicts the manufacturer's plate and states as follows: "Gyro-Trac inc. Manufactured in Canada by Woodpecker Industries."[6] Tuttle has met its burden.

Any ambiguity that the Defendants might argue that arises out of this plate should be resolved in Tuttle's favor. Brown v. Investment Management and Research, Inc., 323 S.C. 395, 399, 475 S.E. 2d 754, ___ (1996). Tuttle has amply plead and the Tuttle Affidavit is evidence that movant Gyro-Trac, Inc., is, at a minimum, involved in the distribution system that placed the incident GT-25 into the stream of commerce. And, because this defendant and the nominal seller

---

[5] Paragraphs in Mr. Jack Tuttle's Affidavit are referenced herein as: "Tuttle Affidavit at [ ]."
[6] Gyro-Trac (USA), Inc. was listed as seller and Tuttle was listed as buyer for the incident GT-25 machine. Complaint, Exhibit B at 1.

of the incident GT-25 were both under the administration of President Gaudreault,[7] and given that the nominal seller is a South Carolina corporation, this defendant cannot be heard to argue that it had no expectation that the GT-25 would be purchased by consumers in South Carolina. Moreover, since the master purchase agreement between Gyro-Trac (USA), Inc. and Tuttle integrated a South Carolina choice of forum by reference to South Carolina law, a good faith argument cannot be made that this movant had no expectation that it would be hailed into South Carolina to defend a lawsuit over a brush cutter that it placed in the stream of commerce. Gaudreault's status as president of non-movant South Carolina corporate defendant Gyro-Trac (USA), Inc., and his status as president or vice president of four of the five movants, including his status as president of Gyro-Trac, Inc., imputes Gaudreault's knowledge to Gyro-Trac, Inc. See e.g., South Carolina Law Enforcement Division v. The "Michael and Lance", 284 S.C. 368, 370, 327 S.E. 2d 327 ___ (1985). Gaudreault's actual complicity in the scheme is also arguably imputed to Gyro-Trac, Inc.

Tuttle has satisfied its prima facie showing. Given Tuttle's allegations and the evidence cited herein, this Court does not exceed its powers under the Due Process Clause of the Constitution if it asserts personal jurisdiction over Gyro-Trac, Inc. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-298 (1980). Moreover, the inclusion of this Defendant in Tuttle's complaint does not offend the traditional notions of fair play and substantial justice.

---

[7] While both defendants Gyro-Trac (USA), Inc. and Gaudreault have denied that Gaudreault is president of Gyro-Trac (USA), Inc., the Business Registry for Quebec, Canada identifies him as such. An extract of the Business Registry for Gyro-Trac (USA), Inc. is attached hereto as Exhibit 3. To the extent that the Defendants assert that service of process was not proper through Gaudreault, Tuttle has obtained service on the Defendants through the South Carolina Secretary of State as statutory agent for corporations not licensed to do business in South Carolina. Copies of letters from the South Carolina Secretary of State are attached hereto as Exhibit 4. Tuttle has also complied with the pertinent provisions of the Hague Convention with respect to the Defendants. Copies of Tuttle's Request for Service Abroad are attached hereto as Exhibit 5.

B.  9163-2521 Quebec, Inc.[8]

In support of its motion to dismiss, 9163-2521 Quebec Inc. has submitted an affidavit of defendant Daniel Gaudreault, its president.  Inter alia, Gaudreault asserts that "9163-2521 Quebec, Inc." is the same entity as Gyro-Trac, Inc."  Gaudreault at 14.

Given that assertion and Gyro-Trac, Inc.'s status in the distribution scheme as outlined herein at III (A), Tuttle respectfully refers this Court to its argument with respect to Gyro-Trac, Inc. in all respects.  Tuttle's evidence is further bolstered by the evidence that Gyro-Trac, Inc., Gyro-Trac (USA), Inc., and this defendant all operate under President Gaudreault's administration.

Tuttle has satisfied its prima facie showing.  Given Tuttle's allegations and the evidence cited herein, this Court does not exceed its powers under the Due Process Clause of the Constitution if it asserts personal jurisdiction over 9163-2521 Quebec, Inc.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-298 (1980).  Moreover, the inclusion of this Defendant in Tuttle's complaint does not offend the traditional notions of fair play and substantial justice.

C.   Usitech Nov, Inc.

In support of its motion to dismiss, Usitech Nov, Inc. has submitted the affidavit of defendant Daniel Gaudreault, a corporate director.  Gaudreault Affidavit at 10.  Gaudreault avers that Gyro-Trac (USA), Inc. purchases its inventory from Usitech Nov, Inc. Gaudreault Affidavit at 9.

---

[8]  Through administrative error, Tuttle inadvertently omitted prefix "9163-2521" from this named defendant in its complaint. Plaintiff's counsel has prepared a Consent Order which defense counsel has agreed to endorse permitting the substitution of "9163-2521 Quebec, Inc." for "Quebec, Inc." as a party defendant in the event that the Court does not grant its motion to dismiss.

8

South Carolina's long arm statute permits jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.  S.C. Code Ann. § 36-3-803 (1)(g) (2003).

In addition to the allegations in its complaint described above, Tuttle has submitted the affidavit of David A. Sallmann, a design engineer who will be identified as one of Tuttle's expert witnesses.  Mr. Sallmann's Affidavit is attached hereto as Exhibit 2.[9]  In his affidavit, Mr. Sallmann has verified the authenticity of a photograph attached as Exhibit B to his affidavit that was taken of the cab of a GT-13.  Sallmann Affidavit at 1.  The GT-13 was sold to a South Carolina corporation by Gyro-Trac (USA), Inc.  The photograph attached to Mr. Sallmann's Affidavit depicts the manufacturer's plate and states as follows: "Gyro-Trac inc. Manufactured in Canada by Usitech Nov."[10]  Tuttle has met its burden by submitting direct evidence linking this Canadian-based defendant as the manufacturer of a GT-13 that was sold to South Carolina defendant Gyro-Trac (USA), Inc.  At a minimum, Usitech Nov, Inc. is involved in the distribution system that placed its Gyro-Trac brush cutter into the stream of commerce.

Moreover, while Gaudreault purports to submit his affidavit for Usitech Nov, Inc. as one of three listed directors of Usitech Nov, Inc. Gaudreault omits his status as vice president.  Gaudreault Affidavit, Exhibit B at page 2.   Because this defendant manufacturer and the nominal seller of the Gyro-Trac brush cutter were both under the administration of President Gaudreault for Gyro-Trac (USA), Inc. and Vice President Gaudreault for Usitech Nov, Inc., and given that the nominal seller Gyro-Trac (USA), Inc. is a South Carolina corporation, this Canadian-based defendant cannot be heard to argue that it had no expectation that the Gyro-Trac

---

[9] Paragraphs in Mr. David Sallmann's Affidavit are referenced herein as: "Sallman Affidavit at [ ]."

[10] Gyro-Trac (USA), Inc. was listed as seller and Tuttle was listed as buyer for the incident GT-25 machine. Complaint, Exhibit B at page 1.

brush cutter would be purchased by consumers in South Carolina.  Moreover, since the master purchase agreement between Gyro-Trac (USA), Inc. and its buyer integrated a South Carolina choice of forum by reference to South Carolina law, a good faith argument cannot be made that this movant is surprised because he has been hailed into a South Carolina court.   Gaudreault's status as president of non-movant South Carolina corporate defendant Gyro-Trac (USA), Inc., and his status as president or vice president of four of the five movants, including his status as vice president of Usitech Nov, Inc. imputes Gaudreault's knowledge to Usitech Nov, Inc. See e.g., South Carolina Law Enforcement Division v. The "Michael and Lance", 284 S.C. 368, 370, 327 S.E. 2d 327 ___ (1985).  Gaudreault's actual complicity in the scheme is also arguably imputed to Usitech Nov, Inc.

Given Tuttle's allegations and the evidence submitted and cited herein, this Court does not exceed its powers under the Due Process Clause of the Constitution if it asserts personal jurisdiction over Usitech Nov, Inc.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-298 (1980).  Moreover, the inclusion of this Defendant in Tuttle's complaint does not offend the traditional notions of fair play and substantial justice.

D.  Woodpecker Industries

In support of its motion to dismiss, Woodpecker Industries has submitted the affidavit of defendant Gaudreault.  It is not apparent in what capacity Gaudreault submits his affidavit. Nevertheless, Gaudreault avers that Woodpecker Industries, inter alia,  "….has no contacts whatsoever with South Carolina or the Plaintiff in this matter."  Gaudreault at 17.

South Carolina's long arm statute permits jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's production, manufacture, or

10

distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed. S.C. Code Ann. § 36-3-803 (1) (g) (2003).

In addition to the allegations in its complaint described above, Tuttle has submitted the affidavit of its president Jack Tuttle attached hereto as Exhibit 1. In his affidavit, Mr. Tuttle has verified the authenticity of a photograph attached as Exhibit C to his affidavit that was taken of the cab of the incident GT-25. The photograph depicts the manufacturer's plate and states as follows: "Gyro-Trac inc. Manufactured in Canada by Woodpecker Industries."[11] Tuttle Affidavit at 3. Tuttle has met its burden.

As with Usitech Nov, Inc., there is a direct link between Defendant Woodpecker Industries and Tuttle. Aside from manufacturing the incident GT-25 brush cutter machine, Woodpecker Industries' prominence in the distribution system and the overall scheme described in the complaint, particularly given its contacts with Gyro-Trac, Inc. and Usitech Nov, Inc. are yet to be fully developed. Tuttle has, however, satisfied its prima facie evidence of complicity.

In further support of Gaudreault's averments relating to Woodpecker Industries, Gaudreault has attached Exhibit E to his affidavit which purports to be "[a] print out detailing the corporate status [of Woodpecker Industries] from the Business Register for Quebec, Canada..." However, another print out detailing the corporate status of Usitech Nov, Inc. from the Business Register for Quebec, Canada attached as Exhibit 6 reveals that that Woodpecker Industries has/had a relationship with Usitech Nov, Inc. Exhibit 4 at page 2. While the documentary evidence is yet to be submitted to fully support Tuttle's allegations of complicity, Tuttle respectfully submits that a prima facie case has been established. Moreover, Gaudreault's status as president of non-movant South Carolina corporate defendant Gyro-Trac (USA), Inc., and his

---

[11] Gyro-Trac (USA), Inc. was listed as seller and Tuttle was listed as buyer for the incident GT-25 machine. Complaint, Exhibit B at page 1.

11

status as president or vice president of four of the five movants, including his status as vice president of Usitech Nov, Inc., as a related company arguably imputes Gaudreault's knowledge to Woodpecker Industries.  See e.g., South Carolina Law Enforcement Division v. The "Michael and Lance", 284 S.C. 368, 370, 327 S.E. 2d 327 ___ (1985).  Gaudreault's actual complicity in the scheme is also arguably imputed to Woodpecker Industries.

Under these circumstances, this defendant cannot be heard to argue that it had no expectation that the GT-25 would be purchased by consumers in South Carolina.  Since the master purchase agreement between Gyro-Trac (USA), Inc. and Tuttle integrated a South Carolina choice of forum by reference to South Carolina law, Woodpecker Industries is precluded from framing a good faith argument that it had no expectation that it would be hailed into South Carolina to defend a lawsuit over a brush cutter that it placed in the stream of commerce and that is the subject of this lawsuit.  Gaudreault's status in Usitech Nov, Inc., and his actual complicity in the common scheme are amply before this Court.

Given Tuttle's allegations and the evidence cited herein, this Court does not exceed its powers under the Due Process Clause of the Constitution if it asserts personal jurisdiction over Woodpecker Industries.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-298 (1980).  Moreover, the inclusion of this Defendant in Tuttle's complaint does not offend the traditional notions of fair play and substantial justice.  Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-298 (1980).

    E.  Gyro-Trac West Coast, Inc.

In support of its motion to dismiss, Gyro-Trac West Coast, Inc. has submitted the affidavit of defendant Gaudreault, a corporate director.   By reference to what Gaudreault has described as a print out detailing the corporate status from the Business Register for Quebec,

12

Canada, Gaudreault states that he is not the sole shareholder or director. Gaudreault at 7. It is left for the reader to determine that Gaudreault is its president.[12] Gaudreault, Exhibit A at page 5. Moreover, a further review of this exhibit reveals that non-movant Gyro-Trac (USA), Inc. is a "composant" or "component" of Gyro-Trac West Coast, Inc. Id at p.6.

South Carolina's long arm statute permits jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed. S.C. Code Ann. § 36-3-803 (1)(g) (2003).

In addition to the allegations in its complaint described above, Tuttle notes that the similarity between the "businesses" of Gyro-Trac West Coast, Inc., and the remaining movants. The fact that this defendant is a related party/component of Gyro-Trac (USA), Inc. is instructive. These similarities support Tuttle's allegations that Gyro-Trac West Coast, Inc. was complicit in the complained of acts, particularly since Gyro-Trac (USA), Inc.'s website depicts "West Coast" in its advertising. Exhibit 2 to Complaint. Moreover, since Gyro-Trac, (USA), Inc., Gyro-Trac, Inc., Gyro-Trac West Coast, Inc. and Usitech Nov, Inc. are all under the administration of President or Vice President Gaudreault, it would seem that Gyro-Trac West Coast, Inc. is precluded from framing a good faith argument that it was unaware of Gyro-Trac, (USA), Inc.'s use of its business name, but perhaps most importantly, the fact that South Carolina choice of law and forum clauses were integrated in Gyro-Trac (USA), Inc.'s master purchase agreement. An additional, but perhaps not as compelling argument is the "coincidence of addresses" – the corporate address of this defendant and that of co-defendant and movant Gyro-Trac, Inc., are identical – 2033, Rue Des Presides, Saint-Emile (Quebec). Gaudreault, Exhibit A at pages 4, 5.

---

[12] In his Answer, Gaudreault denied that he is president of Gyro-Trac West Coast, Inc. Gaudreault Answer at 3. Gaudreault does admit, however, that this Defendant is engaged in the sale and service of forestry and land mulching equipment and machinery. Gaudreault Affidavit at 8.

13

As with the other Defendants, Gaudreault's status as president of non-movant South Carolina corporate defendant Gyro-Trac (USA), Inc., and his status as president or vice president of four of the five movants, including his status as president of Gyro-Trac West Coast, Inc. imputes Gaudreault's knowledge to Gyro-Trac West Coast, Inc.   See e.g., South Carolina Law Enforcement Division v. The "Michael and Lance", 284 S.C. 368, 370, 327 S.E. 2d 327 ___ (1985). Gaudreault's actual complicity in the scheme is also arguably imputed to Gyro-Trac West Coast, Inc.

Given Tuttle's allegations and the evidence cited herein, this Court does not exceed its powers under the Due Process Clause of the Constitution if it asserts personal jurisdiction over Gyro-Trac West Coast, Inc.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-298 (1980). Moreover, the inclusion of this Defendant in Tuttle's complaint does not offend the traditional notions of fair play and substantial justice. Id.

## IV. Conclusion

Tuttle has amply plead facts which support the exercise of the Court's jurisdiction over these Defendants. There are several coincidences which support Tuttle's "unity of action" allegations in paragraphs 24, 25 and 37 of Tuttle's complaint and are sufficient evidence to permit a jury to draw inferences and make findings of fact. Tuttle has submitted documentary evidence which establishes direct links between Tuttle, Gyro-Trac, Inc. and Woodpecker Industries. Gaudreault has provided an additional direct link between Gyro-Trac, Inc., and Usitech Nov, Inc. The single enterprise allegations are supported by the documentary evidence that four out of five of these Defendants are under the administration(s) of Gaudreault who functions as the president or vice president of four of the Defendants. The remaining defendant (Woodpecker Industries) has a direct link with Tuttle. The fact that Gyro-Trac West Coast, Inc.,

and the nominal seller of the incident machine Gyro-Trac (USA), Inc., are related/component companies of each other provides yet another link.  Even disregarding the imputation of Gaudreault's knowledge and actions, there are genuine questions of fact which concern the Defendants' role in the distribution system sufficient to warrant further inquiry. Looking at the evidence in a light most favorable to Tuttle as the non-movant, Tuttle has made a prima facie showing of personal jurisdiction over the Defendants. Mid-State Distribs., Inc. at 333.

For all of the reasons argued herein, the Defendants' Fed. R. Civ. P. 12(b)(2) jurisdictional arguments should be summarily dismissed.  Plaintiff further prays for an award of its costs and reasonable counsel fees incurred to defend Defendants' motion.

        Respectfully submitted,

        ANASTOPOULO & CLORE, LLC

        BY:    s/ Robert J. Lowe, Jr.
        _____
        Robert J. Lowe, Jr. (Fed. ID No. 9723)
        rlowe@akimlaw.com
        Jason A. Daigle (Fed. ID No. 9588)
        jason@akimlaw.com
        706 Orleans Road
        Charleston, SC  29407
        (843) 722-8070
        (843) 225-7112(fax)

        ATTORNEYS FOR TUTTLE DOZER WORKS, INC.

September 25, 2006
Charleston, South Carolina

CERTIFICATE OF SERVICE

    I certify that the foregoing Plaintiff's Memorandum in Opposition to Defendant Gyro-Trac, Inc., Gyro-Trac West Coast, Inc., Woodpecker Industries, Inc., and Usitech Nov, Inc.'s Memorandum in Support of its Motion to Dismiss was sent by first class mail, postage prepaid on September 25, 2006 to counsel to the defendants Jennifer L. Queen, Attorney at Law, Knight Law Firm, L.L.C., 207 East Third North Street, P.O. Box 280, Summerville, South Carolina, 29484.

                                                  s/ Robert J. Lowe, Jr.

                                                  _____